Edward E. Stewart III, No. HE-2140, SCI-Fayette P.o.Box 9999, LaBelle, Pennsylvania 15450-0999

June 29, 2012

MICHAEL E. KUNZ
UNITED STATES COURTHOUSE
INDEPENDENCE MALL WEST 601 MARKET STREET
PHILADELPHIA, PA 19106-1797

Dear Mr. Kunz

Enclosed please find two (2) copies of my Pro Se 42 U.S.C. §1983 Civil Rights complaint, along with a Money order of the amount of Three Hundred and Fifty ($350.00) Dollars, for Filing Fee(s).

I've enclosed a "MOTION" to waiver the u.s. Marshal's fee for service, and an "APPLICATION FOR APPOINTMENT OF COUNSEL".   With all respect to the court I've scrap all of my financial resource to obtain the filing fee(s) firstly... I am now on a square of distress in a penniless condition. [1].

Bearing light on these troubling circumstances I pray the court aids and comforts the widow's son - by granting these motion(s).

Mr. Kunz, please allow me to thank you for your valuable time and attention to this matter. As I now will await any reply that you could in this regard.

*Sincerely*

Edward C. Stewart III

---

[1]. IN FORMA PAUPERIS CERTIFICATION FROM THE PRISON IS FOLLOWING.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


EDWARD E. STEWART III,
      PLAINTIFF


      v.                            Case Number **12    4040**


MIKE WENEROWICZ,
      DEFENDANT


JOHN DOE(S) 1-4,
  TRANSPORT OFFICER(S)


## 42 U.S.C. § 1983
## CIVIL RIGHTS COMPLAINT


    Plaintiff, EDWARD E. STEWART III, HE-2140 is an adult individual, present-ly confined at the STATE CORRECTIONAL INSTITUTION (SCI) at FAYETTE, P.O. Box 9999, LABELLE, PA 15450-0999.

    Defendant, MIKE WENEROWICZ, is an adult individual employed as the SUPER-INTENDENT OF THE STATE CORRECTIONAL INSTITUTION (SCI) at GRATERSFORD, P.O. Box 246, GRATERSFORD, PA 19426. As SUPERINTENDENT he is in charge of facility man-agement, as well as, the CORRECTIONAL OFFICER(S), and is responsible for its day-to-day internal affairs, operations, and the transportation and safe-keeping of inmate(s). He is sued in his official and individual capacities.

    Defendant(s) JOHN DOE 1-4, are adult individuals employed as CORRECTIONAL OFFICER'S at the STATE CORRECTIONAL INSTITUTION at GRATERSFORD. As CORRECTIONAL OFFICER'S their primary responsibility is the safe transportation, as-well-as care, custody, and control of inmates. They are also sued in their official and individual capacities.


(1).

F A C T S

(1.)     On or around <u>June 14, 2011</u>, PLAINTIFF was scheduled to appear at an evi-
dentiary hearing before the Honorable Judge M. Teresa Sarmina at the CRIMINAL
JUSTICE CENTER (CJC) located at 1301 FILBERT STREET, PHILADELPHIA, PA 19107.

(2.)     On <u>June 9, 2011</u>, PLAINTIFF was scheduled to be transported to
SCI-GRATERSFORD which is located on the outskirts of PHILADELPHIA COUNTY.

(3.)     At or around 4:40AM PLAINTIFF was stripped and searched then ordered to
put on an orange jumpsuit.

(4.)     Procedurally, PLAINTIFF was handcuffed in the front of his body, then
ordered to bend his arms and place his right hand over his left hand. At that
time a device known as the "Black Box" was clasped over the chain in the center
of his handcuffs to immobilize the wrists.

(5.)     Next, a steel chain is threaded through the loophole in the center of the
"Black Box" and wrapped around the body at the waist very firmly and secured at
the small of the back of the PLAINTIFF with a padlock, thus immobilizing the
arms to the front of his lower torso.

(6.)     PLAINTIFF was then ordered to kneel forward on a bench in order for the
leg irons to be fastened onto the ankles.

(7.)     Now fully restrained, PLAINTIFF was ordered onto the transport vehicle
(bus) that would carry him from SCI-FAYETTE to SCI-SMITHFIELD, which serves as
the half-way point between the Eastern and Western DOC region(s).

<u>THE TRANSPORTATION BUS ARRIVES ON SCHEDULE</u>

(8.)     On or around 11:00AM the bus arrived safely at its destination- SCI-SMITH
-FIELD - where PLAINTIFF was placed in a holding cell, counted, fed, while
waiting for the arrival of SCI-GRATERSFORD'S TRANSPORT OFFICER'S.

<u>GRATERSFORD ARRIVES FOR TRANSPORT</u>

(2).

**(9.)**    On or around 1400hrs. (2:00PM) PLAINTIFF was counted and placed back into restraints clothed in an orange jumpsuit with "GRATERSFORD" emblazoned on the back in large black lettering.

**(10.)**    The inmate(s) were loaded aboard the GRATERSFORD vehicle (bus) two at a time. PLAINTIFF was seated next to Mr. KAREEM GLASS, No. HU-2290 at the back of the bus —on the end of a [T]an slippery fiberglass bench— having nothing to grab hold of which rendered the PLAINTIFF helpless due to fact that he was in full restraint and not secured by seatbelt or other safety device. There were no "Black Safety Strips" present on the seating bench PLAINTIFF was occupied on.

**(11.)**    Subsequently, while the vehicle [bus] was exiting the highway at a relatively high rate of speed, the bus quickly came around a sharp turn on a junction which caused PLAINTIFF to jerk vigorously to the right. He was abruptly awakened by the force of Mr. Glass's body crashing into the PLAINTIFF'S left shoulder.

**(12.)**    The PLAINTIFF was sliding to the right and in his panic trying to anchor himself from falling into the aisle while also supporting the weight of Mr. Glass. A Mr. WILLIAM PITTS, No. HK-8461, who was seated in the seat directly in front of the PLAINTIFF was also attempting to anchor himself to keep from falling out into the aisle screaming, "SLOW DOWN, SLOW DOWN YA'LL!!".

**(13.)**    The jumpsuit PLAINTIFF was wearing made it increasingly difficult to keep from sliding off the bench seat. Single-handed, all his strength was no match to combat gravities pull, PLAINTIFF'S right knee "slammed" into the aisle, and his body shifted while carrying Mr. Glass's weight upon PLAINTIFF'S left shoulder. PLAINTIFF heard a distinct "POP" in the left shoulder then immediately was constricted with severe and excruciating pain(s).

### THE BUS ARRIVES AT SCI-GRATERSFORD

**(14.)**    Due to security protocol the PLAINTIFF had to remain in the seat re-strained until the vehicle (bus) entered through the front gate of the institu-tion which was not be for another two-and-a-half (2½) hours after the incident.

(15.)   CORRECTIONAL OFFICER (C/O) VANCLIFF, who was one of the transport officer's was the first officer to open the security cage that stood between the inmates and driver. As C/O VANCLIFF started down the aisle, he was stopped at the front of the bus by a Mr. TAMIR MONTGOMERY, No. HB-1889, telling him "there is a man screaming at the back of the bus!"

(16.)   Once the C/O came to the PLAINTIFF'S rescue, he unhooked him and escorted PLAINTIFF to the intake medical area.

### AT THE MEDICAL AREA

(17.)   The nurse told the PLAINTIFF that there was nothing she could do for him, but scheduled an emergency doctor's visit for tomorrow... it was at or around 1800hrs. (6:00PM)... this means that the PLAINTIFF had to go all night and half a day in excruciating pain before the serious medical need(s) could be addressed.

### JUNE 10, 2011 AT THE INFIRMARY

(18.)   The PLAINTIFF was not seen by a doctor until about 1430hrs. (2:30PM). Now finally, after a shoulder examination a conclusion was rendered that PLAINTIFF did indeed sustain a great deal of trauma to his left shoulder. In fact there was a noticeable tear to the left rotator cuff, however, the doctor refused to give the PLAINTIFF an Xray or medicine for the pain. The doctor ordered "ROBAXIN" and told PLAINTIFF to fill out another "SICK CALL SLIP" if the ROBAXIN didn't work.

### PURSUANT TO (PLRA) ACT REQUIREMENTS

(19.)   PLAINTIFF submitted an INMATE GRIEVANCE (DC.ADM-804) June 10, 2011, GRIEVANCE No.370177. The final decision deemed PLAINTIFF'S GRIEVANCE as "FRIVOLOUS" November 10, 2011. Therefore PLAINTIFF has exhausted administrative remedies.

### FIVE (5) WEEKS GO BY BEFORE RECEIVING AN XRAY

**(20.)**    Since the first visit to the infirmary, PLAINTIFF had seen four (4) other doctor's, it was not until the fourth visit that an Xray was ordered for the shoulder injury which was on or around <u>July 15, 2011</u>.

**(21.)**    PLAINTIFF had to wait an additional two (2) weeks before actually getting any Xrays, which were not reviewed until after being re-transported back to SCI FAYETTE.

<u>July 27, 2011 GRATERSFORD REMANDS PLAINTIFF</u>

**(22.)**    PLAINTIFF was informed on <u>July 26, 2011</u>, that he would be transported back to SCI-FAYETTE -tomorrow morning- July 27, 2011 PLAINTIFF was awaken at 0345hrs. (3:45AM) and by 0415hrs. (4:15AM) he had been fed and counted.

**(23.)**    On or around 0445hrs. (4:45AM), PLAINTIFF was stripped and searched and placed in an orange jumpsuit and went through the same procedures as captioned above in paragraph(s) four (4) through seven (7) were carried out.

**(24.)**    Once the PLAINTIFF was loaded aboard GRATERSFORD'S transport vehicle (bus) on or around 0520hrs. (5:20AM), PLAINTIFF visibly noticed that the seats were blue and the "Black Safety Strips" were in place on the physical seat(s). Black strips have a rough texture comparable to that of sandpaper so that when the transportee sits upon them they are resistant to sliding while in motion.

**(25.)**    On or around 1900hrs. (7:00PM), the PLAINTIFF arrives at SCI-FAYETTE where the restraints were removed and PLAINTIFF was seen by the intake nurse, who asked why the PLAINTIFF receive the Xrays that followed him from GRATERSFORD?

**(26.)**    PLAINTIFF informed the nurse of the ordeal he'd been through and the nurse could see the pain on PLAINTIFF'S face, also, that he could not lift his left arm as well as having difficulty with the simple task of undressing and dressing. The nurse documented the incident and scheduled PLAINTIFF for the next available doctor's appointment.

<u>AUGUST 1, 2011 AT THE INFIRMARY</u>

(27.)    PLAINTIFF was seen by **Dr. Philip Balk**, who reviewed the Xrays and examined PLAINTIFF from head to toe and was quite disturbed at the findings...

   **(A)** PLAINTIFF should've received a neck Xray because he had **tenderness in** that region and couldn't move the head freely from side to side.

   **(B)** Upon review of the Xray(s) which clearly showed a great deal of damage had been sustained to the left A/C joint and Clavicle.

   **(C)** Dr. Balk could not understand why PLAINTIFF was **never** given anti-inflammatories and/or medicine for pain: Dr. Balik ordered an emer-gency neck and spinal Xray as well prescribed **"MOBIC"** for the PLAINTIFF.

## THE CONCLUSION OF THE XRAY(S) AND EXTENT OF INJURIES

(28.)    As the doctor suspected, PLAINTIFF'S Xray(s) showed damage to the left region of the neck and inflammation to the spine which was deemed **consistent** with the nerve pain(s) which ran from the back of PLAINTIFF'S spine through the shoulder continuing down the left arm impacting the left thumb and pointer finger.

(29.)    After receiving a second Xray of the left shoulder -after constant sick call visits and an inability to undergo physical therapy- due to extreme levels of pain the doctor(s) deem the PLAINTIFF'S shoulder injury as **"CHRONIC"**.

(30.)    There was such horrendous damage to PLAINTIFF'S left clavicle, as well his A/C Joint that the medical team of SCI-FAYETTE rendered for the PLAINTIFF to undergo **[PAIN MANAGEMENT THERAPY]** which consists of injection(s) of **"NOVACAINE"** and **"DEPO-MEDROL"** along with oral medication(s).

### C L O S I N G

(31.)    Before the PLAINTIFF stepped onto SCI-GRATERSFORD'S transport vehicle (bus) on **June 9, 2011** (where the mishap unfolded) there was nothing physically wrong with the shoulder, neck, or upper-spine. He did not have any physical pain(s), nor was there a painful bruise on his right knee.

**(6).**

(32.)    The primary duties of CORRECTIONAL OFFICER'S consist of [c]are, [c]ustody and [c]ontrol... however the DEFENDANT'S showed Deliberate Indifference toward the PLAINTIFF'S 8th & 14th Amendment ⓐ of the U.S. Constitution, when they carelessly ignored the dangerous disaster that was posed and that which caused and/or contributed to PLAINTIFF'S serious injury(ies).

(33.)    July 27, 2011, when PLAINTIFF was transported back to SCI-FAYETTE aboard SCI-GRATERSFORD'S transport bus, there were Black Safety Strip(s) thereon the seats... which plainly assimilates that there is a serious need for them.

(34.)    There is a serious need for "**Black Safety Strips**" to be on the seats of SECURITY TRANSPORT VEHICLE ⓢ (Bus) and they were **NOT** available to assure the safety of the PLAINTIFF.

(35.)    Had there been the "**BLACK SAFETY STRIP(S)**" available it is more likely than not that PLAINTIFF would not have sustained the seriuous physical injury (ies).

(36.)    As a direct result of the DEFENDANT'S deliberate indifference to PLAINTIFF'S safety, he suffered and continues to suffer daily chronic physical pain(s) and mental anguish.

   **WHEREFORE,** PLAINTIFF, EDWARD E. STEWART III respectfully requests that this court enter judgment in his favor, and against DEFENDANT'S in the amount of **One Hundred and Fifty Thousand** ($150,000.00) **U.S. Dollars Compensatory Damages.**

   Enter judgment in PLAINTIFF'S favor against DEFENDANT'S for **One-Hundred and Fifty-thousand** ($150,000.00) **U.S. Dollars Punitive Damages** and award PLAINTIFF attorney's fee's and the costs of litigation.

                    **DECLARATION AND SIGNATURE**

   I declare under penalty of perjury that the foregoing is true and correct.

Date: June 29, 2012                         SIGNATURE OF PLAINTIFF

                (7).            /S/ Edward E. Stewart III

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

42 U.S.C. §1983
CIVIL RIGHTS COMPLAINT

Edward E. Stewart III,                          :
                   PLAINTIFF        :
                              :                   NO. **12   4046**
vs.                                             :
                              :
Mike Wenerowicz,                                :
                 DEFENDANT       :
John Doe(s)                                     :
    [1-4 Transport Officer(s)]            :
                 DEFENDANT       :

## MOTION:

To the Honorable Judge of the above named court:

I, Edward E. Stewart III, residing at SCI-Fayette; P.O. Box 9999; LaBelle, PA 15450-0999; hereby respectfully request for this Honorable Court to waive the U.S. Marshalls Fee of Service of this complaint to the above named Defendants in this matter of the captioned cause of action.  In support of this motion Petitioner avers that:

(1.) I am one natural man being an inhabitant on the free dry soil, without a drop of water in sight, in the original jurisdiction of the State of Pennsylvania.

(2.) I have enclosed with my complaint the $350.00 filing fee.

(3.) I am currently employed at the institution as a "block worker" compensated at the rate of twenty cents, ($0.20) per hour.

Wherefore, Petitioner humbly requests that this Honorable Court grants this motion.

Respectfully Submitted;

(S) *Edward E. Stewart III*
Edward E. Stewart,
Pro Se Petitioner

Date: June 29, 2012

IN THE UNITED STATES DISCTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

42 U.S.C. §1983
CIVIL RIGHTS COMPLAINT


Edward E. Stewart III,                  :
                    PLAINTIFF           :
                                        :
          vs.                           :                    12    4046
Mike Wenerowicz  and                    :        No._____
John Doe(s)                             :
     [1-4 Transport Officers]           :
                    DEFENDANT           :


## APPLICATION FOR APPOINTMENT OF COUNSEL

TO THE HONORABLE JUDGE OF THE ABOVE NAMED COURT:

        The Petitioner, Edward E. Stewart III , residing at SCI Fayette, P O Box 9999, La Belle, PA  15450, respectfully request that this Honorable Court would appoint counsel in the matter of the captioned cause of action. In support of this petition the Petitioner avers that:

        1.  I am unable to obtain counsel to represent me in this matter because I am currently confined in a State Correctional Facility at the aforementioned address.

        2.  I am currently employed at the institution as a "Block worker" compensated at the rate of $.20 cents per hour.

        3.  I am uneducated in the sciences and mechanics of law; and do not have access to computers, telephones and/or access to Westlaw or Lexus.


                              Respectfully Submitted:


Date: June 29, 2012                  Edward E. Stewart III
                                     Petitioner

**3**

## UNSWORN DECLARATION

I, Edward E. Stewart III, do hereby verify that the facts set forth in the within Petition are true and correct to the best of my knowledge, information and belief and that any false statements herein are made subject to the penalties of 18 Pa.C.S.A. §4904, relating to unsworn falsification to authorities.

Date: June 29,     2012

_edward C. Stewart III_
Pro se, Petitioner

## PROOF OF SERVICE

I, Edward E. Stewart III hereby verify that I am this day serving the foregoing document[s] in manner listed below which service satisfies the requirements of Pa.R.A.P. 121.  this service also satisfies the requirements of the Prisoner's Mailbox Act;

(Com, v. Jones 700 A.2d 423; Houston v. Lack 108 S.Ct. 2379):

Service by First Class Mail:

Dated:     June 29 2012

_Edward C. Stewart III_

Pro Se Defendant
SCI Fayette
P O Box 9999
La Belle, PA  15450