**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EDWARD E. STEWART, III,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| | |
| **v.** | |
| | |
| **MICHAEL WENEROWICZ,** | **NO.  12-4046** |
| **DENNIS BRUMFIELD,** | |
| **MICHAEL DOYLE,** | |
| **JOHN HOFER,** | |
| **KEITH VANCLIFF,** | |
| **ROBERT GRUBER,** | |
| **CORIZON HEALTH, INC.,** | |
| **RICHARD STEFANIK, M.D.,** | |
| **MICHAEL HERBIK, D.O.,** | |
| **RAYMOND MARCHAK, P.A., and** | |
| **SUSAN BERRIER, R.N.,** | |
| **Defendants.** | |

**DuBois, J.**                                                                    **August 27, 2015**

**M E M O R A N D U M**

## I.    INTRODUCTION

This prisoner civil rights action arises out of injuries sustained by plaintiff, Edward E.

Stewart, III, during defendants' transportation of plaintiff while in state custody, and the

subsequent medical care for those injuries. Plaintiff asserts claims under 42 U.S.C. § 1983

against ten individual defendants and Corizon Health, Inc. for alleged violations of his rights

under the Eighth and Fourteenth Amendments, and state law claims for medical malpractice

against defendants Dr. Richard Stefanic,[1] Dr. Michael Herbik, Raymond Machak, P.A., Susan

Berrier, R.N., and Corizon Health. The Court refers to defendants Michael Wenerowicz, Michael

---

[1]         This defendant's name is spelled as "Stefanik" in the Second Amended Complaint, but
medical defendants note that this defendant's named should be spelled "Stefanic." For purposes
of this Memorandum, the Court adopts the spelling used by medical defendants.

Doyle, Dennis Brumfield, John Hofer, Robert Gruber, Keith Vancliff, and Berrier collectively as "Commonwealth defendants," and Dr. Stefanic, Dr. Herbik, Machak, and Corizon Health collectively as "medical defendants."

Presently before the Court is Commonwealth Defendants' Motion to Dismiss the Second Amended Complaint, Defendants Corizon Health, Inc., Richard Stefanic, M.D. (Misidentified as "Dr. Stefanik"), Ray Machak, PA and Michael Herbik, D.O.'s Motion to Dismiss Plaintiff's Complaint, and Plaintiff's Motion, *Nunc Pro Tunc*, for Extension of Time to File Certificates of Merit. For the following reasons, the Court denies defendants' Motions to Dismiss and grants plaintiff's Motion for Extension of Time to File Certificates of Merit.

## II.   BACKGROUND

### A.   Factual Background[2]

#### 1.   Transportation to SCI-Graterford

In June 2011, plaintiff was incarcerated at SCI-Fayette under the custody of the Pennsylvania Department of Corrections ("DOC"). (2d Am. Compl. ¶ 16.) On June 9, 2011, prior to a scheduled court appearance in Philadelphia, plaintiff was transported to SCI-Smithfield and then placed on a DOC bus with approximately thirty-five other inmates for transportation to SCI-Graterford. (*Id.* ¶¶ 17–18.) DOC officer-defendants Hofer, Vancliff, and Gruber were stationed on the bus to SCI-Graterford, and were "charged with controlling the inmates and ensuring [their] safe transport … to SCI-Graterford." (*Id.* ¶ 20.) Defendants Hofer, Vancliff, and

---

[2]      As required on a motion to dismiss, the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal quotation marks omitted).

Gruber rotated driving the bus during the trip from SCI-Smithfield to SCI-Graterford. (*Id.* ¶¶ 21, 23.)

Prior to placing plaintiff on the bus, defendants Hofer, Vancliff, and Gruber handcuffed and shackled plaintiff to a waist belt, restricting the movement of his arms. (*Id.* ¶ 24.) Defendants then seated plaintiff on a fiberglass bench inside the bus, next to another inmate. (*Id.* ¶ 25.) Plaintiff was seated in the last row of the bus, near the aisle, while the inmate next to him was seated next to the window. (*Id.* ¶¶ 25–26.) The bus did not have seatbelts or other safety restraints so defendants did not fasten plaintiff in a seatbelt or otherwise secure him in the vehicle. (*Id.* ¶ 27.)

While driving from SCI-Smithfield to SCI-Graterford, defendants Hofer, Vancliff, and Gruber each drove the bus "in an erratic manner and at excessive speeds." (*Id.* ¶ 28.) Throughout the drive, the inmates pleaded with those defendants to slow down and stop driving erratically; they "responded to [the inmates'] concerns with snide remarks, expletives, and laughter." (*Id.* ¶¶ 29–30.)

At one point, either defendant Hofer or defendant Gruber drove the bus in circles around a shopping center. When the inmates asked why that defendant was driving the bus in circles, he drove faster. (*Id.* ¶¶ 33–34.) When the inmates asked that defendant to slow down, "the driver continued to drive the bus in a circle in an erratic and fast manner." (*Id.* ¶ 35.) Then, without warning, the driver made a sharp turn, causing plaintiff to be thrown from his seat. (*Id.* ¶ 36.) As plaintiff braced for his fall off the bench, his right knee "slammed into the floor of the bus." (*Id.* ¶ 37.) The inmate seated next to plaintiff was also thrown from the bench and "crashed into [plaintiff's] left shoulder with his full weight." (*Id.* ¶ 38.) Plaintiff immediately felt a "pop" in his

3

left shoulder, followed by excruciating pain radiating from the back of his spine down to the

fingers of his left arm. (*Id.* ¶¶ 46–47.) Plaintiff also felt extreme pain in his knee and shoulder

and screamed in pain. (*Id.* ¶ 39.)

Plaintiff and the other inmates called for assistance, but defendants Hofer, Vancliff, and

Gruber yelled back that plaintiff would be able to see medical personnel when they reached SCI-

Graterford. (*Id.* ¶¶ 40, 43.) Thereafter, another inmate helped plaintiff return to his seat. (*Id.*

¶ 41.) Plaintiff "sat on the fiberglass bench screaming in excruciating pain." (*Id.* ¶ 42.)

Defendants Vancliff, Gruber, and Hofer "did not stop the bus, attempt to assist [plaintiff], or

otherwise respond to [his] injuries until the bus arrived at SCI-Graterford." (*Id.* ¶ 44.) Plaintiff

had to wait approximately two hours before the defendant-officers provided him with any

assistance. (*Id.* ¶ 45.)

### 2.     Deficient Medical Treatment

Once the DOC bus reached SCI-Graterford, Defendant Vancliff assisted plaintiff out of

the bus and escorted him to the SCI-Graterford medical department. At the time, the pain was so

intense that plaintiff had trouble lifting his left arm above his head, and the pain in his knee

caused him to walk with a limp. (*Id.* ¶¶ 48–49.) When plaintiff arrived at the medical

department, a nurse told him that she was not able to treat him, that no doctor was available, and

that he would have to wait until the next day, June 10, 2011, to be seen by a doctor. (*Id.* ¶¶ 51,

53.) Plaintiff was "unable to lift his shoulder and needed assistance getting dressed." (*Id.* ¶ 52.)

Plaintiff was seen by defendant Dr. Stefanic the next day, June 10, 2011, at

approximately 2:30 p.m. (*Id.* ¶ 54.) Plaintiff told Dr. Stefanic about his knee and shoulder

injuries, and said the injuries left him in excruciating pain and made it difficult for him to walk.

(*Id.* ¶ 55.) Dr. Stefanic diagnosed plaintiff as suffering from "blunt trauma to his shoulder area with tenderness and slight pain," and wrote in his notes that there was a tear in plaintiff's left rotator cuff. (*Id.* ¶ 56.) Dr. Stefanic did not examine plaintiff's knee, (*id.* ¶ 59), and did not order a follow-up X-Ray or additional testing for plaintiff's shoulder or knee, (*id.* ¶ 57). Dr. Stefanic prescribed plaintiff Naprosyn, a pain reliever, and Robaxin, a muscle relaxant, for his shoulder, and told plaintiff to put water on his knee and take the prescribed medications. (*Id.* ¶¶ 58–59.) Plaintiff was instructed by Dr. Stefanic to fill out another sick call slip if the medication did not work. (*Id.* ¶ 58.)

On July 12, 2011, plaintiff returned to the medical department at SCI-Graterford, reporting ongoing pain from his injuries. (*Id.* ¶ 60.) At that time plaintiff was seen by defendant Machak, a physician's assistant. (*Id.* ¶¶ 13, 60.) Plaintiff told Machak that his shoulder was still causing him pain and that his knee was swollen, making it painful for him to walk. (*Id.* ¶¶ 61–62.) Machak did not examine plaintiff's knee, (*id.* ¶ 61), but ordered an X-Ray for plaintiff's shoulder, which was scheduled for July 15, 2011, (*id.* ¶ 62.)

On July 15, 2011, Dr. Nathan Feldman performed an X-Ray of defendant's left shoulder. (*Id.* ¶ 63.) Dr. Feldman concluded that additional imaging of plaintiff's shoulder by MRI examination should be considered if plaintiff's symptoms persisted or it was otherwise clinically needed. (*Id.* ¶ 64.) No additional imaging was obtained at the time. (*Id.*)

Plaintiff returned to SCI-Fayette on or around July 27, 2011, and was seen by an intake nurse upon his arrival. (*Id.* ¶ 65.) Plaintiff informed the intake nurse about his injuries, told her he was in terrible pain and could not get dressed or undressed, and demonstrated that he could not lift his left arm. (*Id.* ¶ 66.) The nurse scheduled plaintiff to see Dr. Phillip Balk on August 1,

5

2011. (*Id.* ¶ 67.) Upon examining plaintiff and reviewing his X-Rays, Dr. Balk ordered neck and spine X-Rays, which had not been done at SCI-Graterford, and noted that plaintiff had not received adequate pain medication at SCI-Graterford. (*Id.* ¶¶ 69–70.) The new X-Rays showed damage to the left region of plaintiff's neck and inflammation to the spine, which Dr. Balk informed plaintiff was consistent with the nerve pain he experienced down the back of his spine, through his shoulder, and down through his fingers. (*Id.* ¶ 70.) Dr. Balk did not examine plaintiff's knee. (*Id.* ¶ 71.)

While at SCI-Fayette, plaintiff was also seen by defendants Berrier, a nurse, and Dr. Herbik. Although plaintiff presented to defendants "with excruciating pain in his shoulder and knee," (*id.* ¶ 73), Dr. Herbik and/or Berrier told plaintiff that "they would not spend money for diagnostic tests" and that his injuries "could be handled with Motrin from the commissary." (*Id.* ¶ 74.) According to plaintiff, Dr. Herbik and Berrier were aware of Dr. Feldman's radiology report directing plaintiff's physicians to obtain additional testing if plaintiff's pain persisted. (*Id.* ¶ 75.) Defendants Dr. Herbik and Berrier, however, did not order additional testing for either plaintiff's shoulder or knee. (*Id.* ¶¶ 75–76.)

To date, plaintiff has not received any treatment for his right knee or physical therapy for his left shoulder. (*Id.* ¶¶ 77–78.) Plaintiff continues to have difficulty walking due to his knee injury, and his shoulder pain continues to limit his range of movement and ability to engage in physical activities. (*Id.* ¶¶ 77–80.)

### 3.    Deficient Transportation Policies and Procedures

Plaintiff alleges that the injuries he sustained while being transported to SCI-Graterford were the result of deficient policies and procedures established and maintained by

Commonwealth defendants Wenerowicz, Doyle, and Brumfield. At all times relevant to the present litigation, defendant Wenerowicz was employed as the Superintendent of SCI-Graterford, defendant Brumfield was employed as the Captain of the Guard at SCI-Graterford, and defendant Doyle was employed as the Lieutenant of the Guard at SCI-Graterford. (*Id.* ¶¶ 4–6.) Plaintiff contends that these defendants were responsible for overseeing lower-ranking officers and maintaining, enforcing, and overseeing prison policies at SCI-Graterford, including transportation policies. (*Id.*) In particular, plaintiff alleges that these defendants failed to enforce the policy set out in the prison's Facility Security Procedures Manual, "mandat[ing] that transport vehicles be equipped with seatbelts or other safety devices." (*Id.* ¶¶ 90–91.) Plaintiff also contends that defendants Wenerowicz, Doyle, and Brumfield "failed to maintain and/or enforce a prison policy regarding prison transport such that reckless and erratic driving and speeding would be prohibited, particularly where the inmates were not safely restrained." (*Id.* ¶ 94.) According to plaintiff, by failing to enforce or adopt these policies, defendants Wenerowicz, Doyle, and Brumfield "acted with deliberate indifference to inmates' safety," "created a substantial risk of harm to inmates," and led to plaintiff being "transported in an unsafe manner that caused [plaintiff] to become severely injured." (*Id.* ¶¶ 95–96.)

### 4.   Deficient Medical Policies and Procedures

Plaintiff further contends that the deficient medical care he received at SCI-Graterford and SCI-Fayette was the result of deficient policies and procedures established and maintained by defendant Corizon Health. At all times relevant to the present litigation, Corizon Health held a contract to provide healthcare to inmates at every state correctional institute in Pennsylvania, including at SCI-Graterford and SCI-Fayette. (*Id.* ¶ 113.) Plaintiff alleges that, at both SCI-

Graterford and SCI-Fayette, Corizon Health maintained an "institutional policy, custom, and/or practice in which medical professionals failed to provide inmates with adequate access to medical care, necessary tests, and necessary treatment." (*Id.* ¶ 114.) Furthermore, plaintiff contends that Corizon Health implemented a policy of denying medical treatment for non-medical reasons, in particular to "maximize cost savings at the expense of patient health and safety." (*Id.* ¶ 115.) This conduct, plaintiff argues, constitutes deliberate indifference to inmates' serious medical needs. (*Id.* ¶ 122.) He further claims that defendants Dr. Stefanic, Machak, and Dr. Herbik denied him adequate medical care for his injuries in accordance with these policies. (*Id.* ¶¶ 118, 123.)

     **B.    Procedural Background**

On July 17, 2012, plaintiff filed his *pro se* Complaint asserting claims under 42 U.S.C. § 1983 against Wenerowicz and John Doe Transport Officers 1–4. Wenerowicz filed a Motion to Dismiss on April 5, 2013. On February 5, 2014, the Court granted defendant Wenerowicz's Motion to Dismiss without prejudice to *pro se* plaintiff's right to file an amended complaint covering all claims arising out of the transport and medical treatment set forth in the original Complaint. *Pro se* plaintiff filed his First Amended Complaint on July 15, 2014 against defendants Hofer, Vancliff, Gruber, Brumfield, Doyle, Dr. Stefanic, and Machak. On July 28, 2014, the Court granted plaintiff's request for appointment of counsel and his request to amend the caption to include defendants Berrier and Dr. Herbik.

On October 22, 2014, attorney Yvonne McKenzie was appointed to represent plaintiff. Following a status conference on December 2, 2014, the Court ordered defense counsel to provide plaintiff's counsel with copies of plaintiff's medical records and records of grievances,

8

and granted plaintiff leave to file a Second Amended Complaint on or before March 2, 2015. On

that date, plaintiff filed his Second Amended Complaint against defendants Wenerowicz,

Brumfield, Doyle, Hofer, Vancliff, Gruber, Corizon Health, Dr. Stefanic, Dr. Herbik, Machak,

and Berrier.

In his Second Amended Complaint, plaintiff asserts the following claims against

defendants:

- Count I: § 1983 – Violation of the Eighth and Fourteenth Amendments (against defendants Hofer, Vancliff, and Gruber)
- Count II: § 1983 – Violation of the Eighth and Fourteenth Amendments – Supervisory Liability (against defendants Wenerowicz, Doyle, and Brumfield)
- Count III: § 1983 – Violation of the Eighth and Fourteenth Amendments (against defendants Dr. Stefanic, Machak, Dr. Herbik, and Berrier)
- Count IV: § 1983 – Violation of Eighth and Fourteenth Amendments – *Monell* Liability (against defendant Corizon Health)
- Count V: Medical Malpractice (against defendants Dr. Stefanic, Machak, Dr. Herbik, and Berrier)
- Count VI: Medical Malpractice – Corporate Liability (against defendant Corizon Health)
- Count VII: Medical Malpractice – Vicarious Liability (against defendant Corizon Health)

## III.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a

pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised

by motion to dismiss. To survive a motion to dismiss, a civil plaintiff must allege facts that

"'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234

(3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must

contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To

satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In *Twombly*, the Supreme Court used a "two-pronged approach," which it later formalized in *Iqbal*. 556 U.S. at 679; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint — the well-pleaded, nonconclusory factual allegation[s]" — to determine whether it states a plausible claim for relief. *Id.*

## IV.   DISCUSSION

Commonwealth and medical defendants raise a number of challenges to plaintiff's Second Amended Complaint. The Court first addresses two affirmative defenses asserted by defendants: (1) failure to exhaust administrative remedies under the Prison Litigation Reform Act, and (2) running of the statute of limitations. The Court next turns to defendants' arguments that plaintiff has not sufficiently plead his § 1983 claims and Commonwealth defendants' assertion of a qualified immunity defense. The Court then addresses medical defendants' challenge to the Court's exercise of supplemental jurisdiction over plaintiff's medical malpractice claims and plaintiff's request for extension of time to file certificates of merit to support these claims, as required under Pennsylvania law. Finally, the Court considers medical

defendants' argument that plaintiff's claim for punitive damages against them be dismissed.

**A.      Exhaustion of Administrative Remedies under the Prison Litigation Reform Act**

Commonwealth defendants contend that the Court should dismiss all claims against them as plaintiff has not alleged that he exhausted the administrative remedies available to him, as required under the Prison Litigation Reform Act ("PLRA"). The Court rejects this argument. Exhaustion of remedies is an affirmative defense under the PLRA and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). For that reason, the Court denies Commonwealth defendants' Motion to Dismiss in this regard without prejudice to their right to reassert this defense by motion for summary judgment if warranted by the facts and applicable law.

**B.      Statute of Limitations**

Commonwealth and medical defendants argue that the Court should dismiss plaintiff's claims as to all defendants, except Wenerowicz, as untimely. In particular, defendants contend that plaintiff amended the complaint to add defendants Doyle, Brumfield, Hofer, Vancliff, Gruber, Berrier, Dr. Stefanic, Dr. Herbik, Machak, and Corizon Health after the two-year statute of limitations applicable to plaintiff's § 1983 and medical malpractice claims ran, and that these amendments do not relate back to plaintiff's timely-filed original complaint under Federal Rule of Civil Procedure 15(c).[3]

---

[3]      Civil rights claims under § 1983 are governed by the statute of limitations provided for in personal injury tort claims under state law. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989); *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006). In Pennsylvania, the applicable statute of limitations is two years. 42 Pa. C.S.A. § 5524; *Sameric Corp. of Delaware v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Commonwealth and medical defendants contend that

Under Federal Rule of Civil Procedure 8(c), the statute of limitations constitutes an affirmative defense to an action. The limitations defense may only be raised on a motion under Rule 12(b)(6) "where the complaint facially shows noncompliance with the limitations period and the affirmative defense [of the running of the statute of limitations] clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). In this case, the Court cannot decide the statute of limitations issue on the face of the Second Amended Complaint and concludes that it is proper to address this defense once the parties have completed discovery.

With respect to Commonwealth defendants Doyle, Brumfield, Hofer, Vancliff, and Gruber, plaintiff's claims arise out of the injuries he sustained in the transport incident on June 9, 2011. Thus, his claims against these defendants accrued on that date and the statute of limitations ran on June 9, 2013, more than a year before plaintiff amended his complaint to add these defendants. Plaintiff's amendment of his complaint to add these defendants may still be timely if it relates back to the original complaint, but the Court cannot determine the relation back issue on the face of the Second Amended Complaint. Instead, discovery is required, particularly with respect to the issue of whether Commonwealth defendants had constructive or actual notice of

---

the statute of limitations ran with respect to plaintiff's claims against them on June 11, 2013; plaintiff amended his complaint in July 2014 to add defendants Doyle, Brumfield, Hofer, Gruber, Vancliff, Dr. Stefanic, Dr. Herbik, Machak, and Berrier, and in March 2015 to add Corizon Health. For the reasons discussed *infra*, the Court does not decide the statute of limitations issue at this time.

plaintiff's suit within 120-days of the filing of the original complaint, as required by Federal Rule of Civil Procedure 15(c)(1)(C).[4]

     With respect to medical defendants, Dr. Stefanic, Dr. Herbik, Machak, and Corizon Health, and Commonwealth defendant Berrier, it is not clear from the face of the Second Amended Complaint when plaintiff's § 1983 and state law claims against these defendants accrued. Although medical and Commonwealth defendants argue that plaintiff's claims with respect to his deficient medical care also accrued on the date of the transport incident — June 9, 2011 — that issue cannot be determined based on the pleading alone. Plaintiff received medical care from each of these defendants at different dates, beginning on June 10, 2011 and continuing thereafter; defendants Dr. Herbik and Berrier, for example, only met with plaintiff as early as August 2011, and the exact date of their consultation(s) is not alleged. Plaintiff also argues that these defendants engaged in a continuing violation of his rights as he never received appropriate

---

[4]     Pursuant to Federal Rule of Civil Procedure ("FRCP") 15(c), an amendment to a complaint that changes the party or the naming of the party against whom a claim is asserted properly relates back to the date of the original pleading if the claims against moving defendants "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," and if "within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (i) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (ii) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed. R. Civ. P. 15(c).

     Notice, as required by FRCP 15(c)(1)(C)(i), can be actual or constructive. *Smith v. City of Philadelphia*, 363 F. Supp. 2d 795, 799 (E.D. Pa. 2005). Constructive notice may be demonstrated by "(1) evidence of a shared attorney relationship between a party named in the original complaint and the party sought to be added; and (2) some communication or relationship between the shared attorney and the [moving defendants] during the [120-day] period." *Anderson v. Doe I*, No. 11-6267, 2012 WL 6645536, at *2 (E.D. Pa. Dec. 20, 2012). Notice may also be imputed under an "identity of interest" method, meaning that "the parties are so closely related in their business operations or other activities that filing suit against one serves to provide notice to the other of the pending litigation." *Smith*, 363 F. Supp. 2d at 801.

treatment for his shoulder or knee injury, and that the statute of limitations may not have run on all or some of these claims. It is plaintiff's position that he should have the opportunity to proceed with discovery to "reveal the extent to which [he] can sustain his claims under the 'continuing violations' doctrine." (Pl.'s Resp. to Med. Defs.' Mot. to Dismiss 16.) The Court agrees.

For these reasons, the Court concludes that the statute of limitations issue cannot be resolved on the face of the Second Amended Complaint, and thus denies both Motions to Dismiss with respect to this defense. This denial is without prejudice to defendants' right to raise the statute of limitations defense by motion for summary judgment or at trial if warranted by the facts and applicable law.

### C.     Defendants' Challenges to Plaintiff's § 1983 Claims — Counts I through IV

Plaintiff brings claims pursuant to 42 U.S.C. § 1983 against all defendants for alleged violations of his Eighth and Fourteenth Amendment rights in connection with injuries sustained during his transportation to SCI-Graterford and his subsequent medical care.

42 U.S.C. § 1983 provides, in part, that:

> [e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of a State or Territory. . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

To establish a § 1983 claim, a plaintiff must demonstrate that a person acting under color of state law caused a deprivation of a right secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Thus, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment places restraints on prison officials, for example, by prohibiting the use of excessive force against prisoners, and imposes duties on them to provide humane conditions of confinement and to "take reasonable measures to guarantee the safety of inmates." *Id.* A "denial of [humane] conditions can result from an officer's deliberate indifference to a prisoner's safety." *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008) (citing *Farmer*, 511 U.S. at 847). "The protections afforded by the Eighth Amendment against Federal government interference are applied against the states through the substantive component of the Fourteenth Amendment due process clause."[5] *Young v. Beard*, No. 06-160, 2007  WL 1549453, at *5 (W.D. Pa. May 22, 2007), *report and recommendation adopted* No. 06-160, 2008 WL 934436 (W.D. Pa. Apr. 2, 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 101 (1976)).

Commonwealth and medical defendants challenge each of plaintiff's § 1983 claims on the ground that plaintiff has failed to state a claim for relief. Commonwealth defendants also

---

[5]      Commonwealth and medical defendants argue that the Court should dismiss Counts I through IV, which are styled as Eighth and Fourteenth Amendment claims, to the extent that plaintiff asserts procedural due process claims pursuant to the Fourteenth Amendment. Plaintiff clarifies in his response brief that Counts I through IV assert only claims for violation of the Eighth Amendment standard barring cruel and unusual punishment as incorporated against the states by the Fourteenth Amendment's substantive due process clause. Thus, the Court rejects defendants' argument and denies both Motions to Dismiss to the extent that they move for dismissal of plaintiff's Fourteenth Amendment claims.

assert a qualified immunity defense. The Court addresses defendants' arguments with respect to each claim in turn.

### 1.  Commonwealth Defendants[6]

#### a)  Deliberate Indifference in Driving the DOC Bus — Count I

In Count I, plaintiff claims that Commonwealth defendants Hofer, Vancliff, and Gruber acted with deliberate indifference to plaintiff's safety in driving the DOC bus in a "reckless and unsafe manner in a vehicle without seatbelts or other safety restraints," and that this conduct caused his knee and shoulder injuries. (2d Am. Compl. ¶ 82.) Commonwealth defendants argue that the Court should dismiss Count I because "[n]either the Constitution nor any federal statute guarantees a prisoner's right to proper driving by government employees or agents under § 1983." (Cmmw. Defs.' Mot. to Dismiss 12.) The Court disagrees with Commonwealth defendants' characterization of plaintiff's claim, and concludes that plaintiff has stated a claim for relief against defendants Hofer, Vancliff, and Gruber.

For an Eighth Amendment claim based on failure to ensure a prisoner's safety, plaintiff must show that "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer*, 511 U.S. at 834 (1994)).

---

[6]    As plaintiff's claims against Commonwealth defendant Berrier are similar to the claims against medical defendants, the Court addresses Commonwealth defendants' challenges to plaintiff's claim against Berrier together with medical defendants' challenges to the Second Amended Complaint, *supra* Part IV.C.2.

"Deliberate indifference in this context is a subjective standard: the prison official-defendant must have known or been aware of the excessive risk to inmate safety." *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). In assessing the defendant's mental state, the Court must "'focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be).'" *Hamilton*, 117 F.3d at 747 (quoting *Farmer*, 511 U.S. at 839). However, a plaintiff can prove a defendant's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 824. Additionally, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 826.

Although the Third Circuit has not addressed the precise factual issue presented in this case, a number of federal district courts and circuits have concluded that an Eighth Amendment claim exists where corrections officers transport a prisoner in a vehicle lacking adequate safety restraints, drive the vehicle recklessly with knowledge of the danger posed to the prisoner, and plaintiff suffers an injury resulting from this conduct. In *Rogers v. Boatright*, for example, the Fifth Circuit determined that plaintiff stated an Eighth Amendment claim where he alleged that the defendant-corrections officer "operated the prison van recklessly, knowing that there was a substantial risk that Rogers would be injured if the van stopped abruptly because Rogers was shackled in leg irons and handcuffs and was not provided with a seatbelt," and plaintiff was injured in an abrupt stop resulting from defendant's reckless driving. 709 F.3d 403, 409 (5th Cir. 2013).

Similarly, in *Brown v. Fortner*, the Eighth Circuit concluded, in addressing a motion for summary judgment, that a jury could find an Eighth Amendment violation from evidence that

17

plaintiff was injured in an accident resulting from defendant's reckless driving. In particular, the Eighth Circuit noted that there was evidence that the defendant-corrections officer knew that the plaintiff was not secured with a seatbelt and that he was shackled in such a way that he could not secure himself; chose to drive recklessly and at excess speeds regardless of this knowledge; and ignored the requests of the inmates, including plaintiff, to slow down. 518 F.3d at 559.

In *Otero v. Catalogne*, a court in the Western District of Pennsylvania held that a plaintiff stated an Eighth Amendment claim where he alleged that the driver of a prison transport vehicle operated the vehicle recklessly and at excessive speeds, while falling asleep behind the wheel; that the driver refused plaintiff's request that he pull over and rest; and that his reckless driving led to an accident that caused plaintiff's injury. No. 08-282, 2010 WL 3883444, at *11 (W.D. Pa. Sept. 28, 2010).

Plaintiff's allegations against defendants Hofer, Gruber and Vancliff mirror the allegations in these cases. Thus, the Court concludes that plaintiff has sufficiently alleged Eighth Amendment claims against these three defendants

The Court determines that plaintiff has stated a claim against the defendant who was driving the vehicle at the time of the incident in which plaintiff was injured; plaintiff identifies the driver as either defendant Hofer or defendant Gruber. First, plaintiff has adequately plead facts to demonstrate that he was transported in the DOC bus under conditions that posed a substantial risk of serious harm: plaintiff alleges that he was handcuffed and shackled to a waist belt, which prevented him from protecting himself with his arms when the bus turned sharply, (2d Am. Compl. ¶ 24); the prison van lacked seat belts or other safety restraints and plaintiff was seated on a slippery fiberglass bench with other inmates, (*id.* ¶¶ 25, 27); and defendants Hofer

18

and Gruber took turns driving the van at excessive speeds and in an erratic manner, including driving the bus in circles around a shopping center at high speeds at the time of the incident, (*id.* ¶¶ 28, 34). Second, plaintiff has alleged that defendants Hofer and Gruber were aware of and deliberately indifferent to that substantial risk of harm: As in *Brown* and *Otero*, plaintiff and the other inmates in the transport vehicle pleaded with defendants to slow down and to stop driving erratically; not only did defendants allegedly ignore their pleas, but taunted the inmates for their requests and, shortly before plaintiff was thrown from his seat, further accelerated the vehicle in response to the inmates' concerns. (*Id.* ¶¶ 29–30, 34–35.) Finally, plaintiff adequately alleges causation: either defendant Hofer or Gruber was driving erratically and at excessive speeds when he made a sharp turn that propelled plaintiff and his seatmate off the bench and onto the floor of the van, resulting in plaintiff's injuries. (*Id.* ¶ 36–38.)

The Court further concludes that plaintiff has stated a claim for a violation of the Eighth Amendment against the two defendants who were present but not driving at the time of the incident on the ground that they failed to intervene to stop the driver from operating the vehicle in a reckless manner. "If [an] [] officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation … takes place in his presence, the officer is directly liable under Section 1983." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). An officer is only liable if there is a "realistic and reasonable opportunity to intervene." *Id.* at 651. In this case, plaintiff alleges that defendants Hofer, Vancliff, and Gruber were present at the time of the incident; were aware of and participated in the reckless driving; acknowledged and ignored the inmates' pleas for the defendant-driver to stop driving recklessly; and yet failed to intervene to stop the reckless driving. These allegations are sufficient to demonstrate that the two defendants who were not

driving had a reasonable and realistic opportunity to intervene to prevent a constitutional

violation and failed to do so. *See Cash v. Wetzel*, 8 F. Supp. 3d 644, 662 (E.D. Pa. 2014)

(concluding that, "[b]ecause plaintiff has alleged that defendants were present, and because he

has alleged that a civil rights violation occurred … these officers had a realistic and reasonable

opportunity to intervene in [defendant's] misconduct.").

 For these reasons, the Court determines that plaintiff has stated claims for violation of the

Eighth Amendment against defendants Hofer, Vancliff, and Gruber, and thus denies

Commonwealth defendants' Motion to Dismiss as to Count I.

### b) Supervisory Liability — Count II

 In Count II, plaintiff alleges that Commonwealth defendants Wenerowicz, Doyle, and

Brumfield were deliberately indifferent in failing to enforce prison policies requiring that

transport vehicles be equipped with seatbelts or other safety devices and failing to adopt and

enforce a prison policy "such that reckless and erratic driving and speeding would be prohibited,

particularly where the inmates were not safely restrained," and that these failures caused his

injuries. (*Id.* ¶ 94.) Commonwealth defendants contend that Count II should be dismissed as

plaintiff "fails to allege that [Wenerowicz, Doyle, or Brumfield] personally directed or actually

knew of and acquiesced in the failure to provide Plaintiff a seatbelt or the reckless driving."

(Cmmw. Defs.' Mot. to Dismiss 10.) The Court rejects this argument as it mischaracterizes the

nature of plaintiff's supervisory liability claim.

 "It is well-recognized that government officials may not be held liable for the

unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Barkes v.*

*First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted, rev'd on other*

*grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (quoting *Bistrian*, 696 F.3d at 366).

However, as the Third Circuit recently made clear in its opinion in *Barkes v. First Correctional*

*Medical, Inc.*, supervisor-defendants may be liable under § 1983 "if they, with deliberate

indifference to the consequences, established and maintained a policy, practice or custom which

directly caused the constitutional harm." 766 F.3d at 316. It is not necessary for supervisor-

defendants to personally direct or actually know of and acquiesce in a subordinate's

unconstitutional conduct. *Id.* (distinguishing these two theories of supervisory liability).

 In this case, Count II is based on the theory that, as supervisors at SCI-Graterford,

defendants Wenerowicz, Doyle, and Brumfield failed to adopt or enforce policies to ensure the

safe transportation of prisoners in DOC buses. (Pl.'s Resp. to Cmmw. Defs.' Mot. to Dismiss

21.) To state an Eighth Amendment claim against a supervisor-defendant under § 1983 based on

a deficient policy or procedure, plaintiff must allege that: "(1) the policy or procedures in effect

at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the

defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was

indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement

the supervisory procedure." *Barkes*, 766 F.3d at 319. The Court concludes that plaintiff has

adequately alleged facts to establish all four elements of this test with respect to defendants

Wenerowicz, Doyle, and Brumfield.

 First, plaintiff alleges that these defendants (1) knew that the prison's Facility Security

Procedures Manual required that transport vehicles be equipped with seatbelts or other safety

devices and failed to enforce this policy, and (2) failed to adopt or enforce a prison policy against

"reckless and erratic driving" that threatened inmates' health and safety, creating a substantial

risk of serious harm to inmates. (2d Am. Compl. ¶¶ 90–91, 94–95.) Second, plaintiff alleges that defendants Wenerowicz, Doyle, and Brumfield were aware that "the combination of reckless and unsafe driving, a lack of safety restraints on a bus with fiberglass seats, and limited inmate mobility due to handcuffs and shackles" posed an unreasonable risk of harm to inmates being transported in DOC buses. (*Id.* ¶ 92.) Third, plaintiff alleges that, despite knowing of this unreasonable risk, defendants failed to adopt, maintain, or enforce proper policies, demonstrating their deliberate indifference to the substantial risk of serious harm to inmates while in transit. (*Id.* ¶ 95.) Finally, plaintiff alleges that defendants' failure to implement and enforce the seatbelt policy and to maintain or enforce a policy against reckless and erratic driving, ultimately led to plaintiff being transported in an unsafe and reckless manner, resulting in serious injury to his shoulder and knee.

For these reasons, the Court concludes that plaintiff has alleged sufficient facts to state a claim for supervisory liability under § 1983. Thus, the Court denies Commonwealth defendants' Motion to Dismiss as to Count II.

### c)    **Qualified Immunity**

Commonwealth defendants next contend that, to the extent that the Court concludes that plaintiff has adequately alleged his Eighth Amendment claims against defendants Wenerowicz, Doyle, Brumfield, Hofer, Vancliff, and Gruber, defendants are entitled to qualified immunity. Commonwealth defendants argue that, as the "Third Circuit has not specifically dealt with the issue of seatbelts in state vehicles" "there is no way that Commonwealth defendants would have been aware that their actions were unlawful" and thus defendants are entitled to qualified immunity. (Cmmw. Defs.' Mot. to Dismiss 15–16.) The Court rejects this argument.

The qualified immunity analysis involves two steps: "(1) whether the plaintiff alleged sufficient facts to establish the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the defendant's actions." *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 858 (3d Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Third Circuit has held that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (internal quotations and citations omitted).

As discussed *supra*, plaintiff has adequately plead his Eighth Amendment claims against the moving Commonwealth defendants. Thus, the Court turns to the second prong of the qualified immunity analysis — whether the right at issue was "clearly established" at the time plaintiff was injured while being transported to SCI-Graterford, on June 9, 2011.

For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). However, to find that a right is clearly established, there need not be "'a previous precedent directly in point.'" *Acierno v. Cloutier*, 40 F.3d 597, 620 (3d Cir. 1994) (quoting *Good v. Dauphin County Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989)). "'[R]elatively strict factual identity' between applicable precedent and the case at issue" is not required. *Stoneking v. Bradford Area Sch. Dist.*,

23

882 F.2d 720, 726 (3d Cir. 1989) (quoting *People of Three Mile Island v. Nuclear Regulatory Comm.*, 747 F.2d 139, 144 (3d Cir. 1984)).

The Third Circuit recently examined what precedential authority is required to satisfy the second prong of the qualified immunity analysis. In *Estate of Lagano*, the Third Circuit explained that a plaintiff need not point to a binding decision recognizing a well-established right's application to the specific context at issue to overcome a qualified immunity defense. 769 F.3d at 859. Instead, "[t]he ultimate question is whether an officer had 'fair warning' that his conduct deprived the plaintiff of a constitutional right." *Kingsmill v. Szewczak*, No. 15-2386, 2015 WL 4621456, at *9 (E.D. Pa. July 30, 2015) (citing *Schneyder v. Smith*, 653 F.3d 313, 329 (3d Cir. 2011)). In some cases the unconstitutionality of outrageous conduct will be obvious, but "even as to action less than an outrage, officials can still be on notice that their conduct violates established law in novel factual circumstances." *Gaymon v. Borough of Collingsdale*, No. 14-5454, 2015 WL 4389585, at *4 (E.D. Pa. July 17, 2015) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). When no case law addresses the specific facts at issue, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in issue." *Id.* (quoting *Hope*, 536 U.S. at 741).

The fact that the Third Circuit has not issued a binding decision addressing officials' deliberate indifference to an inmate's health and safety while transporting the inmate in a prison vehicle is not dispositive of whether the Eighth Amendment right alleged by plaintiff is clearly established law. The Court must instead focus its inquiry on "whether 'it would be clear to a reasonable [official] that the alleged [conduct] was unlawful under the circumstances." *Estate of Lagano*, 769 F.3d at 859 (quoting *Saucier*, 533 U.S. at 202 (2001)). The Court concludes that it

would have been clear to a reasonable prison official that the conduct plead by plaintiff with respect to his transportation in the prison van, and defendants' policies or lack of policies which lead to the dangerous transportation, were unlawful under the Eighth Amendment at the time of the alleged violations.

It has long been established that prison officials have an affirmative duty to "take reasonable measures to guarantee the safety of inmates," *Farmer*, 511 U.S. at 832, and when officers act with deliberate indifference in exposing an inmate to a substantial risk of serious harm, this conduct violates the Eighth Amendment, *id.* at 828; *see, e.g.*, *Atkinson v. Taylor*, 316 F.3d 257, 266–67 (3d Cir. 2003) (determining that plaintiff alleged a violation of the Eighth Amendment where prison officials were deliberately indifferent to plaintiff's exposure to second hand smoke, leading to chronic health problems); *Bistrian*, 696 F.3d at 368–69 (concluding that plaintiff alleged a violation of the Eighth Amendment where prison officials placed plaintiff in locked recreation yard with other inmates who were aware that he had acted as an informant against them).

In light of this well-established principle, the Court concludes that *any* reasonable officer would have known that he had a duty under the Eighth Amendment not to place an inmate at substantial risk of serious injury by driving recklessly and erratically, or by failing to intervene to stop such driving, particularly when inmates were not secured with safety restraints, were shackled and unable to protect themselves in the event of a sudden turn or accident, and were pleading with the officers to stop driving in such a manner. The substantial risk of serious harm to inmates from reckless and erratic driving, as alleged by plaintiff in this case, is obvious, and no reasonable officer would think that driving in this way could constitute lawful behavior.

25

Because of the obviousness of the danger, and because the right to safe and humane conditions of confinement is clearly established, "the concomitant constitutional violation was apparent notwithstanding the fact that the very action in question had not previously been held to be unlawful" by the Third Circuit. *Sterling v. Borough of Minersville*, 232 F.3d 190, 198 (3d Cir. 2000) (adopting similar reasoning in concluding that defendant who allegedly violated plaintiff's right to privacy by disclosing information about plaintiff's sexuality was not entitled to qualified immunity).

The Court also notes that, prior to the alleged incident on June 9, 2011, a court in the Western District of Pennsylvania determined in a case similar to the present that a plaintiff stated an Eighth Amendment claim where the driver of a prison transport van drove recklessly and consciously ignored plaintiff's pleas for him to stop doing so, resulting in serious injury to plaintiff. *Otero*, 2010 WL 3883444 at *11. Although not binding precedent, the *Otero* decision further supports the conclusion that the conduct of defendants Hofer, Gruber, and Vancliff, as alleged by plaintiff, was "sufficiently outrageous that a reasonable officer would have known that [their conduct] could violate" plaintiff's constitutional rights. *Kingsmill*, 2015 WL 4621456 at *9.

With respect to defendants Wenerowicz, Doyle, and Brumfield, the law was clear at the time of the alleged transport incident that failing to adopt or enforce policies to protect prisoners, in deliberate indifference to a known and substantial risk of serious harm to them, amounts to a violation of the Eighth Amendment. *See, e.g.*, *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Dep't Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Thus, the Court concludes that no reasonable official would have believed that their failure to enforce an established policy requiring safety

26

restraints in prison transport vehicles, coupled with their failure to adopt policies against reckless and erratic driving, was lawful where defendant-officials were also aware that their deficient policies created an unreasonable risk of serious harm to inmates.

In sum, the Court determines that plaintiff has alleged sufficient facts to establish a violation of his Eighth Amendment rights by defendants Hofer, Vancliff, Gruber, Wenerowiz, Doyle, and Brumfield, and that the rights at issue were clearly established at the time of defendants' actions. As a consequence, these defendants are not entitled to qualified immunity at this stage of the proceedings. The denial is without prejudice to Commonwealth defendants' right to reassert this defense after completion of discovery, if warranted by the facts and applicable law. *See Dix v. City of Philadelphia*, No. 15-532, 2015 WL 4624248, at *6 (E.D. Pa. Aug. 3, 2015) (DuBois, J.) (rejecting qualified immunity defense at the motion to dismiss stage but permitting Commonwealth defendants to raise the defense after completion of discovery).

### 2. Medical Defendants and Nurse Berrier

#### a) Deliberate Indifference to Serious Medical Need — Count III

Plaintiff brings Count III against medical defendants, Dr. Stefanic, Dr. Herbik, and Machak, and Commonwealth defendant Berrier, for deliberate indifference to his serious medical needs in failing to provide an acceptable level of care for his injuries following the transport incident. In their Motion to Dismiss, medical defendants argue that Count III should be dismissed because plaintiff's allegations demonstrate only a dispute between plaintiff and his medical care providers over the proper course of treatment, which medical defendants contend does not amount to an Eighth Amendment violation. (Med. Defs.' Mot. to Dismiss 11–12.) Commonwealth defendants, in their Motion to Dismiss, argue that the Court should dismiss

plaintiff's Eighth Amendment claim against defendant Berrier on the ground that (1) her decision not to order additional diagnostic testing did not amount to deliberate indifference, or, in the alternative, (2) that as a nurse, Berrier did not have the authority to "diagnose, order tests, or conduct examinations." (Cmmw. Defs.' Mot. to Dismiss 12.)

To state a claim for an Eighth Amendment violation based on inadequate medical care, plaintiff must allege facts to demonstrate that defendants were deliberately indifferent to his serious medical needs. *Estelle*, 429 U.S. at 104; *see also Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Deliberate indifference "requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (internal citations and quotation marks omitted). Mere negligence or medical malpractice will not constitute a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 107; *see also Rouse*, 182 F.3d at 197.

The Court notes that neither Commonwealth nor medical defendants contend that plaintiff has failed to sufficiently allege that his medical needs were serious. Thus, the Court's analysis focuses on whether plaintiff has adequately alleged that defendants were deliberately indifferent to those needs. The Court addresses plaintiff's claims with respect to his shoulder injury and his knee injury in turn, and concludes that plaintiff has stated a claim for relief as to Count III.

(i)     Plaintiff's shoulder injury

The Court concludes that plaintiff has stated a claim for deliberate indifference to his serious medical needs against Dr. Stefanic, Dr. Herbik, and Berrier for their failure to obtain

necessary diagnostic tests and provide appropriate treatment of his shoulder injury. Plaintiff

alleges that Dr. Stefanic, his first treating physician at SCI-Graterford, acted with deliberate

indifference in failing to order an X-Ray of his shoulder after diagnosing him with a torn rotator

cuff, as this decision was motivated by cost considerations, rather than medical considerations.

(2d Am. Compl. ¶ 117.) Plaintiff further alleges that Dr. Herbik and Berrier, at SCI-Fayette, also

declined to obtain any further diagnostic testing or provide appropriate treatment of his shoulder,

despite being aware of his ongoing pain and Dr. Feldman's recommendation that he should have

an MRI if his pain persisted. According to plaintiff, Dr. Herbik and Berrier informed him that

"they would not spend money for diagnostic tests." (*Id.* ¶¶ 74–76.)

The Court acknowledges that the issue of whether Dr. Stefanic acted with deliberate

indifference in his treatment of plaintiff's shoulder injury is a close question. Generally, a court

will not "second-guess the propriety or adequacy of a particular course of treatment … [since

such determinations] remain[] a question of sound professional judgment." *Inmates of Allegheny

Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Furthermore, a doctor's decision not to

order a particular test or procedure, such as an X-Ray, will not usually amount to a violation of

the Eighth Amendment. *See Estelle*, 429 U.S. at 107.

However, reliance on non-medical factors, such as budgetary considerations, in deciding

not to order a procedure may support a claim of deliberate indifference. *See Winslow v. Prison

Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011) (acknowledging that denials of medical care

based on non-medical factors, such as cost-saving, may violate the Eighth Amendment); *Shultz v.

Allegheny Cnty.*, 835 F. Supp. 2d 14, 22 (W.D. Pa. 2011) (same); *Boswell v. Sherburne Cnty.*,

849 F.2d 1117, 1123 (8th Cir. 1988) (concluding that basing treatment decisions on efforts to cut

costs amounted to a plausible claim for deliberate indifference). "The deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from cost considerations in [] medical care decisions." *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997). However, in this case, the Court concludes that plaintiff's allegations that Dr. Stefanic diagnosed plaintiff with a serious condition — a torn rotator cuff — but delayed ordering the initial X-Ray simply to cut costs may state a claim for a violation of the Eighth Amendment. Although discovery may not ultimately support this claim, plaintiff's allegations as to Dr. Stefanic's treatment of his shoulder injury are sufficient to survive a motion to dismiss.

With respect to defendants Dr. Herbik and Berrier, the Court notes that a medical professional's knowledge that an inmate needs medical care accompanied by an "intentional refusal to provide that care" amounts to deliberate indifference under the Eighth Amendment. *Lanzaro*, 834 F.2d at 346. Plaintiff alleges that Dr. Herbik and Berrier knew of plaintiff's need for additional diagnostic testing, based on their awareness of his continued debilitating shoulder pain, which had persisted for at least two months at that point, and Dr. Feldman's recommendation that they conduct additional testing if his pain persisted. Despite this knowledge, Dr. Herbik and Berrier refused to obtain such testing. The fact that they recommended some form of treatment — namely, that plaintiff take Motrin from the commissary to alleviate his shoulder pain — does not automatically defeat an Eighth Amendment claim: "[I]f deliberate indifference caused an easier and less efficacious treatment to be provided, the defendants have violated the plaintiff's Eighth Amendment rights by failing to provide adequate medical care." *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978). Furthermore, as with Dr. Stefanic, plaintiff alleges that Dr. Herbik and Berrier refused him necessary testing and care

based on budgetary considerations, rather than medical factors. The Court concludes that these allegations are sufficient to state a claim for deliberate indifference to serious medical need as to defendants Dr. Herbik and Berrier.

Finally, the Court rejects Commonwealth defendants' argument that plaintiff's Eighth Amendment claim against Berrier should be dismissed as she is not "authorized to diagnose, order tests or conduct examinations." (Cmmw. Defs.' Mot. to Dismiss 17.) Such issues are properly raised by motion for summary judgment, once plaintiff has had the benefit of discovery on this issue. *See Anders v. Bucks Cnty.*, No. 13-5517, 2014 WL 1924114, at *6 (E.D. Pa. May 12, 2014) (denying motion to dismiss Eighth Amendment deliberate indifference claim against defendant-nurse and stating that arguments regarding defendant's authority to provide treatment were "more properly raised on summary judgment"). For now, plaintiff's allegations, accepted as true, support an inference that Nurse Berrier did indeed have authority to order additional testing and treatment and was deliberately indifferent in her refusal to do so when treating plaintiff.

(ii)     <u>Plaintiff's knee injury</u>

The Court also concludes that plaintiff has stated a claim for deliberate indifference to serious medical need with respect to defendants Dr. Stefanic, Dr. Herbik, Machak and Berrier, to the extent that he alleges that they did not examine or treat his knee, despite their awareness that he was in serious, ongoing pain and had difficulty walking.

Again, plaintiff's allegation that he received some limited care for his knee — namely, Dr. Stefanic's recommendation that he "put water on his knee" and take the prescribed pain medication, (2d Am. Compl. ¶ 59), — does not necessarily defeat plaintiff's Eighth Amendment claim. "Deliberate indifference does not require a showing of complete failure to provide care,

rather where prison authorities deny reasonable requests for medical treatment and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest." *Imhoff v. Temas*, 67 F. Supp. 3d 700, 710 (W.D. Pa. 2014) (quoting *Lanzaro*, 834 F.2d at 346) (internal quotation marks omitted). Plaintiff alleges that defendants Dr. Stefanic, Dr. Herbik, Machak, and Berrier all declined plaintiff's reasonable requests to examine his knee, and that this failure caused plaintiff continued physical suffering and ultimately impaired his ability to walk. The omission, as alleged, is particularly egregious on the part of Machak, Dr. Herbik, and Berrier as these defendants were told that his condition was not improving and yet "persist[ed] in a particular course of treatment" —i.e., non-treatment — "in the face of resultant pain and risk of permanent injury." *Rouse*, 182 F.3d at 197. For these reasons, plaintiff's allegations, taken as true, are sufficient to demonstrate that defendants Dr. Stefanic, Dr. Herbik, Machak, and Berrier acted with deliberate indifference in denying plaintiff's reasonable requests for examination and treatment of his knee injury and persisting in a course of treatment despite plaintiff's resulting pain and risk of permanent injury.

In sum, the Court determines that plaintiff has adequately stated a claim for relief against defendants Dr. Stefanic, Dr. Herbik, and Berrier for deliberate indifference in treating his shoulder injury and as to defendants Dr. Stefanic, Dr. Herbik, Machak, and Berrier for deliberate indifference in treating his knee injury. Therefore, the Court denies both Motions to Dismiss as to Count III.

### 3.    *Monell* Claim Against Corizon Health — Count IV

Plaintiff claims that, as the provider of healthcare services to inmates incarcerated at SCI-Graterford and SCI-Fayette, defendant Corizon Health acted with deliberate indifference in

implementing policies or customs that caused plaintiff to receive deficient medical care. Medical defendants contend that plaintiff has failed to allege facts demonstrating that defendant Corizon Health was responsible for a policy that caused plaintiff's injuries as plaintiff "only sets forth broad, generic and unsupported allegations regarding an alleged policy, custom, or practice of Corizon." (Med. Defs.' Mot. to Dismiss 14.) The Court disagrees.

At all times relevant to the present litigation, Corizon Health was a private company contracted by the Pennsylvania Department of Corrections to provide medical services within the state correctional institutions. Medical defendants do not contest that Corizon Health was acting under color of state law in providing medical services in SCI-Graterford and SCI-Fayette. Thus, the Court analyzes plaintiff's § 1983 claim as to Corizon Health under the standard of municipal liability first set out in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (analyzing a § 1983 claim against a private corporation providing medical care in prisons under the *Monell* standard).

To state a § 1983 claim against a municipal actor, a plaintiff must allege facts demonstrating (1) a constitutional injury (2) that was caused when the municipality took action pursuant to a custom or policy. *Monell*, 436 U.S. at 694; *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A government policy is made when "a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Beck v. City of Philadelphia*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)) (internal quotation marks omitted). In contrast, a course of conduct may be considered a "custom" when, "though not authorized by the law, such practices of state officials are so permanent and well-

33

settled as to virtually constitute law." *Id.* (quoting *Andrews*, 895 F.2d at 1480) (internal quotation marks omitted). The municipality's execution of the policy or custom must be the "moving force" behind a plaintiff's injury, meaning that a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (internal citations omitted).

The Court concludes that plaintiff has stated a *Monell* claim against defendant Corizon Health. In particular, plaintiff alleges that Corizon Health instituted a number of policies and customs that led its employees to disregard inmates' medical needs and delay provision of medical services, including, *inter alia*, policies of denying medical treatment for non-medical reasons, prioritizing financial considerations over the health and safety of inmates, failing to develop or implement procedures that ensured adequate treatment of inmates' medical needs, and preventing inmates from receiving necessary or recommended medication and medical treatment. (2d Am. Compl. ¶ 119.) Plaintiff also alleges that the implementation of these policies or customs was the "moving force" behind the failure of defendants Dr. Stefanic, Dr. Herbik, Machak, and Berrier to provide him with appropriate treatment for his serious medical needs. (*Id.* ¶¶ 116–17.) Finally, plaintiff alleges that Corizon Health maintained these policies despite its awareness that the policies put inmates at serious risk of substantial harm, demonstrating Corizon Health's deliberate indifference in this regard. (*Id.* ¶ 115.)

Medical defendants contend that plaintiff has failed to plead a policy or custom with sufficient particularity to survive a motion to dismiss. The Court disagrees. Plaintiff is not required to prove his case at this stage of the proceedings; instead, plaintiff must simply allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the

necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The Court concludes that plaintiff's allegations regarding Corizon's deficient policies or customs are sufficient to meet this burden. For these reasons, the Court denies medical defendants' Motion to Dismiss as to Count IV.

### D.   Medical Malpractice — Counts V through VII

In Counts V through VII, plaintiff asserts medical malpractice claims against defendants Dr. Stefanic, Dr. Herbik, Machak, Berrier, and Corizon Health pursuant to Pennsylvania law. Medical defendants only raise one challenge to these claims, namely, that, if the Court concludes that plaintiff has not set forth a federal cause of action against medical defendants, it should decline to exercise supplemental jurisdiction over plaintiff's state law claims. As the Court has determined that plaintiff has stated Eighth Amendment claims against the medical defendants, the Court rejects medical defendants' argument and denies their Motion to Dismiss as to Counts V through VII.

The Court also notes that, to maintain his medical malpractice claims, plaintiff is required to file certificates of merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3(a)(1) and (b).[7] The certificates of merit must be filed with the original complaint or 60 days thereafter, Pa.

---

[7]      Pennsylvania Rule of Civil Procedure provides that, "In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that … (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm…." Pa. R. Civ. P. 1042.3(a)(1). Furthermore, "[a] separate certificate of merit shall be filed as to each licensed professional against whom a claim is asserted." *Id.* 1042.3(b)(1).

R. Civ. P. 1042.3; plaintiff has not yet filed the required certificates of merit and now moves the Court, *nunc pro tunc*, for an extension of time in which to file. The Notes to Pennsylvania Rule of Civil Procedure 1042.3 state that, "[i]n ruling upon a motion to extend time [to file certificates of merit], the court shall give appropriate consideration to the practicalities of securing expert review." Furthermore, "[t]here is a basis for granting an extension of time … if, despite diligent efforts by counsel, records necessary to review the validity of the claim are not available." Plaintiff avers that, despite his diligent efforts while acting *pro se* and the diligent efforts of his counsel, he did not have access to a complete set of his medical records until January 7, 2015. Upon receipt of the records on that date, plaintiff's counsel proceeded to assess the nature and viability of plaintiff's medical malpractice claims, and filed the present Motion for Extension of Time to File Certificates of Merit on March 4, 2015, just two days after filing plaintiff's Second Amended Complaint.

In light of plaintiff's diligent efforts to procure his medical records, and noting that neither Commonwealth nor medical defendants oppose this motion, the Court grants plaintiff's Motion, *Nunc Pro Tunc*, for Extension of Time to File Certificates of Merit. Plaintiff shall file his certificates of merit on or before September 18, 2015.

### E.    Punitive Damages

Finally, medical defendants argue that plaintiff's claim against them for punitive damages should be dismissed as plaintiff has failed to plead facts demonstrating that defendants acted recklessly or with deliberate indifference in their provision of medical treatment to plaintiff, as required to support an award of punitive damages. (Med. Defs.' Mot. to Dismiss 23.) The Court disagrees.

In a § 1983 case, a defendant may be held liable for punitive damages "if the actions are motivated by 'evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Mitros v. Cooke*, 170 F. Supp. 2d 504, 508 (E.D. Pa. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). "The standard to show 'callous indifference' to a federally protected right has been found to be essentially the same standard as 'deliberate indifference' under the Eighth Amendment." *Walker v. Brooks*, No. 07-280, 2009 WL 3183051, at *9 (W.D. Pa. Sept. 30, 2009) (citing *Bermudez v. City of Philadelphia*, No. 06-4701, 2007 WL 1816469 (E.D. Pa. June 21, 2007)).

The Court has already determined that plaintiff sufficiently alleged that medical defendants acted with deliberate indifference in their treatment of plaintiff's knee and shoulder injuries. These allegations are also sufficient to support plaintiff's claim for punitive damages against medical defendants. As a result, the Court denies medical defendants' Motion to Dismiss as to plaintiff's punitive damages claim, without prejudice to medical defendants' right to raise the issue again by motion for summary judgment or at trial if warranted by the facts and applicable law.

## V.    CONCLUSION

For the foregoing reasons, the Court denies Commonwealth defendants' Motion to Dismiss, denies medical defendants' Motion to Dismiss, and grants Plaintiff's Motion, *Nunc Pro Tunc*, for Extension of Time to File Certificates of Merit.

An appropriate order follows.

37